JOHN F. HUNT *vs.* HENRY BARKER *et al.*

*When master is owner, pro hac vice.*

When the master sails his vessel on shares, employing the crew, contracting for business, fixing the rate, signing the bill of lading, and having the entire management when away from home, he is the owner, *pro hac vice*, and as such is entitled to sue for damages for the detention of the vessel, even though there be an agent whom the master was accustomed to consult when at home and who had a right of direction, if he chose to exercise it, but who had no control of the vessel when the bill of lading for the voyage in question was signed, and nothing to do with contracts for freight.

ON REPORT.

ASSUMPSIT for damages for the detention of the schooner Leonessa,

in the nature of demurrage. The declaration, bill of lading and voyage in this case, were the same as in the preceding one of *Hall* v. *Barker*, names and dates only being changed. Both suits were commenced May 17, 1873, and the general issue was pleaded in defence to them. Capt. Hunt engaged his vessel to carry stone from Vinalhaven to Delaware Breakwater for Barker & Bodwell, who had a contract with the government to deliver fourteen thousand tons of stone there, and the bill of lading was signed by the plaintiff June 18, 1867. He arrived at the breakwater July 9, 1867, and it was admitted that he was unreasonably detained there twenty-eight days beyond the proper time for discharging, and that thirty-four dollars a day would be a fair compensation for the delay ; for which sum and interest he was to have judgment, if entitled to recover in this action. His right of recovery was contested upon the same grounds that have been already stated in the next preceding case, and also because he had not (as it was alleged) such control of the Leonessa as to make him owner, *pro hac vice*, nor such as Capt. Hall had of the Mabel Hall.

Upon this point Capt. Hunt testified, substantially, that he was part owner and in command of the Leonessa in the summer of 1867, then sailing her for one-half the net earnings, employing and paying the crew, contracting for freights and fixing the rates. He said : "Away from home, I had wholly to do with the management of the vessel throughout. At home the agent did. They always allowed me to manage her. I had the victualing of the ship." He then stated his employment by Barker & Bodwell, as aforesaid, and that "the agent of whom I have spoken had no control over the vessel at the time this contract was made. They allowed me to do all such kind of business. . . . He had nothing at all to do with the making of contracts for freights. I made demand on the defendants August 15, 1867." Upon cross-examination he said : "I conferred with the agent upon the subject of freight. I don't know that I did at that time. He never interfered with it. He knew I was making this trade and didn't object. I was not generally accustomed to consult him about my business

when I was at home." This question was then put: "You say away from home you had the control, but at home the agent had the control ?" and answered ; "yes ; he had a right to direct me if he chose. I saw him every day and he knew about it."

Mr. Bodwell testified to this: "We never supposed for a moment but that these parties would get demurrage; not from us, but from the government. Col. Stuart was of that opinion, and I didn't have any other."

*Baker & Baker* for the plaintiff.

*Gould & Moore* for the defendants.

In addition to the considerations urged in the case of Hall against these same defendants, their counsel said that "in order to make the master of a vessel owner, *pro hac vice*, under a contract for sailing her on shares, he must have the exclusive control of her for the time being. This principle runs through all the recent authorities." *Noyes* v. *Staples*, 61 Maine, 422 ; *Thompson* v. *Snow*, 4 Maine, 269 ; *Emery* v. *Hersey*, Id., 407 ; *Winsor* v. *Cutts*, 7 Maine, 261 ; *Lyman* v. *Redman*, 23 Maine, 289 ; *Bonzey* v. *Hodgkins*, 55 Maine, 98 ; *Sims* v. *Howard*, 40 Maine, 276.

APPLETON, C. J.   This is an action of special assumpsit for demurrage of the schooner Leonessa.

The plaintiff was a part owner, sailing the vessel on shares, employing the crew, receiving half of the net earnings, contracting for freight, fixing the rate, signing bills of lading, and having the whole management when absent from home.   There was an agent for the owners, but he had no control of the vessel when the bill of lading was signed, nor anything to do with contracts for freight.

True, the plaintiff says he was accustomed when at home to consult the agent about business, and he had a right to direct him if he chose.   The plaintiff might undoubtedly consult with the owners for their common good, or with their agent.   So the owners having the right to terminate the contract with the master not being limited in time, might so do, and so doing might direct the

master what to do, and they might authorize an agent to do the same. But it does not appear that they have done so; nor that they have in any way interfered with the action of the master in sailing the vessel on shares.

Upon the whole evidence, the plaintiff must be deemed as the owner, *pro hac vice*, as against these defendants, and as such he is entitled to recover upon the principles settled in *Hall* v. *Barker*. The mere advising with the owners or their agent was a matter of courtesy and nothing more. Taking all the declarations of the plaintiff together, we think he meant to be understood as asserting the fact that he sailed the vessel on shares, and had the entire control of its management.

He demanded payment of this claim on the fifteenth day of August, 1867, and must recover interest upon the sum agreed upon as damages from that date. *Defendants defaulted.*

WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.